June 4, 2009

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
Civil Action No. 09-2365

In Regard to the Matter of:

Bayside State Prison
Litigation

ALVIN THORNTON

     -vs-

WILLIAM H. FAUVER, et al,

     Defendants.

OPINION/REPORT
OF THE
SPECIAL MASTER

\*     \*     \*     \*

THURSDAY, JUNE 4, 2009

\*     \*     \*     \*

BEFORE THE HONORABLE JOHN W. BISSELL, SPECIAL MASTER

June 4, 2009

Page 2

1

2

3

4              Transcript of proceedings in the above

5    matter taken by Theresa O. Mastroianni, Certified

6    Court Reporter, license number 30X100085700, and

7    Notary Public of the State of New Jersey at the

8    United States District Court House, One Gerry Plaza,

9    Camden, New Jersey, 08102, commencing at 12:08 PM.

10

11

12

13

14

15

16

17

18              MASTROIANNI & FORMAROLI, INC.

19       Certified Court Reporting & Videoconferencing

20              251 South White Horse Pike

21              Audubon, New Jersey 08106

22                  856-546-1100

23

24

25

June 4, 2009

1

2    A P P E A R A N C E S:

3

4

5         ROSELLI & GRIEGEL, PC
          BY:  STEVEN GRIEGEL, ESQUIRE
6         1337 STATE HIGHWAY 33
          HAMILTON SQUARE, NEW JERSEY  08690
7         609-586-2257
          ATTORNEYS FOR THE DEFENDANTS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              JUDGE BISSELL:  I'm now reopening

2    proceedings in the matter of Alvin Thornton, civil

3    action 09-2365.

4              This opinion/report is being issued

5    pursuant to the directives of the Order of Reference

6    to a Special Master and the Special Master's

7    Agreement and the guiding principles of law which

8    underlie this decision to be applied to the facts

9    upon which it is based as set forth in the jury

10   instructions in the Walker and Mejias jury charges to

11   the extent applicable to the allegations of

12   Mr. Thornton.

13              As finalized after review under Local

14   Civil Rule 52.1 this transcript will constitute the

15   written report required under paragraph seven of the

16   Order of Reference to a Special Master.

17              Mr. Thornton arrived at Bayside State

18   Prison in December of 1996 and remained at that

19   facility until February of 1999.  After an assignment

20   to the tents for classification, he eventually was

21   assigned to F Unit, cell number 246 as he testified

22   here before us on June 2.

23              He was a direct witness to the murder

24   of Officer Baker.  In fact, saw him stabbed by

25   Beverly, heard remarks by Beverly at the time, saw

June 4, 2009

Page 5

1   Officer Baker stagger first within the unit and then

2   out into the courtyard.

3              He was among the inmates extracted from

4   the unit on that very day, July 30th, 1997, and among

5   those who were taken to Internal Affairs to be

6   interviewed about the matter.  He does not allege any

7   assault upon extraction from his cell.

8              As I mentioned, he does not assert that

9   he was assaulted in any way upon the extraction or

10  upon the early parts of his journey to the office of

11  Internal Affairs.  However, he does describe certain

12  events as occurring to him while being placed up

13  against a wall in a segment of the administrative

14  area of the prison while awaiting being called in to

15  speak to those in Internal Affairs.

16             His testimony appears first at pages 31

17  through 34 which I'll read in various segments

18  beginning at line 13 on page 31.

19             "Question:  Did there come a time when

20  you were actually assaulted?

21             "Answer:  Yes.

22             "Question:  When was that?

23             "Answer:  As I proceeded through the

24  gauntlet to the east arcade, as I got to the gate to

25  go through into the east arcade area, an officer was

June 4, 2009

1  on the right and an officer was on the left, both of

2  them proceeded to grab me by my arms, walk me past

3  the gym to go to the right to where the officers are

4  in the east arcade."

5          A map was employed to try to show his

6  journey.

7          Continuing at page 32, line 20.

8          "Answer:  I was along this wall before

9  you go into the yard.  To where they had me stand

10  with my face to the wall.  The officer, there was

11  still an officer on my left, officer on my right.

12  Officer on my left unhandcuffed my left hand, told me

13  to place it above my head on the wall.  I placed my

14  hand on the wall to which he grabbed my hand with his

15  right hand and hit my hand with the stick with his

16  left hand.

17          "Question:  Can you describe what you

18  mean by a stick?

19          "Answer:  The stick that they was

20  carrying.

21          "Question:  Big, long, black?  What

22  color was it?

23          "Answer:  They were black.

24          "Question:  Now, were these the same

25  two officers who had escorted you from your cell?

1                    "Answer:  No.

2                    "Question:  When had you been

3      transferred to other officers?  Where?

4                    "Answer:  They worked in pairs.  The

5      two that walked me down the stairs as I was going out

6      of F Unit, they did not follow me.  When I got to the

7      gate of the east arcade, two other officers were

8      already there on post, to which they took me to the

9      wall.  When it was time for me to go in to see IA,

10     two officers came from that direction and escorted me

11     in there to see them.

12                   "Question:  Now, other than this strike

13     to your hand, were you assaulted at any other time?

14                   "Answer:  No.

15                   "Question:  So this is the assault

16     we're talking about across your hand?

17                   "Answer:  Correct.

18                   "Question:  And it was which hand?

19                   "Answer:  The left.

20                   "Question:  And were all your fingers

21     hit?

22                   "Answer:  Yes.

23                   "Question:  Did you scream out in any

24     way?

25                   "Answer:  No.

June 4, 2009

1           "Question:  At any time did you ever

2    disobey any command given to you by those SOG

3    officers?

4           "Answer:  No."

5           I might note on cross-examination he

6    indicated that actually four fingers other than his

7    thumb had been the fingers that were hit.  I don't

8    find this to be, by any means, a fatal inconsistency.

9    In fact, no inconsistency at all.  It's not unusual

10   for people to refer to those four digits as fingers

11   as opposed to the thumb.  Furthermore, with the hand

12   spread out on the wall, it's entire likely and

13   physically possible to have been batted across the

14   four fingers other than the thumb with the thumb

15   being out of range.

16           There was also some cross-examination

17   with regard to prior testimony, I believe, in the

18   depositions that hadn't mentioned the fact that his

19   hand had been held against the wall by the officer.

20   I find that at most this was an omission in the

21   description of the event in the first instance.  And

22   secondly, once again, is not so fatally different as

23   to cast any doubt upon the credibility of the

24   testimony presented here in court.

25           In short, there was no evidence

1    presented effectively to rebut or cast doubt upon the

2    credibility of the testimony of this witness.

3              In a motion at the conclusion of the

4    evidence I was asked to assess the questions of

5    whether we were dealing here with deminimis force

6    and/or deminimis injury.  At that time I stated I was

7    not prepared to rule essentially as a matter of law

8    on such a motion, that the only force applied here

9    was deminimis.  And I persist in that determination.

10   Brooks v. Kyler, 204 F.3rd 102 (3rd Cir. 2000)

11   recites some five factors that can be considered.

12   I'm not certain that they're exclusive, but they

13   certainly cover the waterfront in determining whether

14   the use of force in this case can be characterized as

15   deminimis.  And here I do find that the officer on

16   Mr. Thornton's left at the time he was being held in

17   position before going in to speak with Internal

18   Affairs did, in fact, strike him with force to the

19   extent that it inflicted an injury upon him.  The

20   pain was acute at first and later with swelling for a

21   couple of days and eventually a deformed left pinky,

22   although no lasting pain.  I'll have a little more to

23   say about that when I get around to the question of

24   deminimis injury.

25              Furthermore, on this factual review,

1    D-708 introduced in evidence by the defense which

2    consisted of Mr. Thornton's answers to

3    interrogatories, in answer number four, was entirely

4    consistent with his testimony here in court at which

5    point he states:  "When I arrived at the east arcade,

6    I had to wait outside with my face placed nose first

7    against the wall.  While I was waiting to go in and

8    be questioned by IA, one of the SOGs approached me

9    from behind and told me to place my left hand over my

10   head and place it against the wall.  After saying

11   this, he hit my left hand with the night stick and

12   told me that I better tell everything that I know."

13             That in my view establishes or

14   reestablishes the fact of the striking, but also

15   indicates a reason.  Namely, that this officer in the

16   wake of the death of a fellow corrections officer,

17   albeit not one with whom the SOG officer worked on a

18   regular basis, serving his own agenda in this case

19   basically said, you tell everything to Internal

20   Affairs.

21             Now, let's take a look at the Brooks

22   factors to see where they fall here.  One, was there

23   a need for the application of force?  Absolutely not.

24   This plaintiff had been completely compliant with all

25   instructions up to that point, had not needed to be

1     handled or encouraged even to do the things that were

2     being asked of him and was in a completely vulnerable

3     and benign position with one hand still handcuffed

4     and the other one up against a wall which he was

5     facing with no opportunity to become a danger either

6     to the area or the officers around him.

7                    Second, the relationship between the

8     need and the amount of force that was used.  Well,

9     the need here was zero and the force that was used

10    was considerably more than might have been needed

11    even to prompt the inmate into compliance.

12                    Three, the extent of injury inflicted.

13    It was not extensive.  But that will be addressed in

14    my observations on deminimis injury and/or the extent

15    of damages proven here.

16                    Four, the extent of the threat to the

17    safety of staff and inmates as reasonably perceived

18    by the responsible officials on the basis of the

19    facts known to them.  In this particular setting at

20    this particular time with the presence of officers

21    having this inmate completely under control, there

22    was absolutely no threat whatsoever to them or to the

23    surrounding area and the persons within it.

24                    Five, any efforts made to temper the

25    severity of a forceful response.  Once again, there

1   was no effort at all to temper this aggressive,

2   unnecessary whack on the back of his hand.  And as

3   the Hudson case in the Supreme Court describes it a

4   bit more succinctly:  "The Eighth Amendment's

5   prohibition of cruel and unusual punishments

6   necessarily excludes from constitutional recognition

7   deminimis uses of physical force provided that the

8   use of force is not of a sort repugnant to the

9   conscience of mankind."

10          I find frankly that this assault by the

11  SOG officer on this occasion under these

12  circumstances is indeed repugnant to the conscience

13  of mankind.  Completely unnecessary, serving his own

14  agenda in terms of what he wanted this person to say

15  as a witness and indeed sadistic with the specific

16  design and intent to inflict punishment through the

17  use of entirely excessive force.

18          I do reiterate, however, at this time,

19  I don't think it's necessary to elaborate on the

20  standards involving deminimis injury, but I do find

21  that indeed the injury here was deminimis.  Now, the

22  significance of deminimis injury, however, as a

23  matter of law, and I also addressed this on June 2 at

24  page 107 of the transcript, is that it will not

25  support a claim for emotional or psychological

1    injury.  In other words, there has to be a physical

2    injury component under the PLRA in order to support

3    such an award, but even if there is slight injury or

4    deminimis injury, that is not sufficient under

5    emerging case law to satisfy the PLRA's requirement.

6    I think that is an adequate presentation for purposes

7    of this opinion.  I will, however, reiterate the

8    philosophy behind that.  And once again we're

9    construing the PLRA as it appears at 42 USC.

10   Section 1997 e(e).

11            I'm quoting from the case of Mitchell

12   v. Horn, 318F.3rd 523 in the Third Circuit.  The

13   analysis is as follows:  "We believe that reading

14   1997 e(e), to allow a plaintiff to allege any

15   physical injury no matter how minor would produce an

16   unintended and, indeed, absurd result.  Were we not

17   to read 1997 e(e) as requiring more than a deminimis

18   injury, we would turn its physical injury

19   prerequisite into a mere pleading requirement,

20   thereby rendering the requirement meaningless as a

21   practical matter.  We, therefore, follow the approach

22   of the 5th, 9th and 11th Circuits in requiring a less

23   than significant but more than deminimis physical

24   injury as a predicate to allegations of emotional

25   injury."

1          Once again, there are a number of other

2    decisions that have been brought to my attention

3    which talk about circumstances comparable or similar

4    to those involving Mr. Thornton's injury.  I choose

5    not to belabor this record by addressing them all

6    specifically, because I find that in this particular

7    case, as I've already described the nature of this

8    injury, it is indeed deminimis.  To some extent, of

9    course, one has to characterize that as being

10   fortunate because of the fact that he was not injured

11   more severely.

12          As I've noted here there was, indeed,

13   excessive, unnecessary and sadistic force imposed

14   upon Mr. Thornton within the comtemplation of those

15   legal principles.  However, in light of the fact that

16   the striking of Mr. Thornton was an isolated, single

17   incident, not prolonged or repeated, while actionable

18   for recovery of compensatory damages, I do not find

19   that this assault visited upon him rose to the level

20   of being so egregious as to support a claim for

21   punitive damages, at least against the unidentified

22   officers who were with him and the one who inflicted

23   this injury.

24          Finally, although not every item of

25   evidence has been discussed in this opinion/report,

1    all evidence presented to the Special Master was

2    reviewed and considered.  I find that the injury

3    inflicted here is actionable.  I find that the injury

4    was acute initially and remained permanent, although

5    without continuing pain or any significant

6    restriction on Mr. Thornton's activities.  He does,

7    indeed, have a slightly deformed left pinky, but that

8    does not cause him any continuing physical distress,

9    nor did it for any measurable length of time after it

10   was incurred.

11                   However, I do recommend in this report

12   that the district court enter an award of

13   compensatory damages in the amount of $2,000 in Mr.

14   Thornton's favor.

15

16

17

18

19

20

21

22

23

24

25

June 4, 2009

1               C E R T I F I C A T E

2

3        I, Theresa O. Mastroianni, a Notary Public and

4   Certified Shorthand Reporter of the State of New

5   Jersey, do hereby certify that the foregoing is a

6   true and accurate transcript of the testimony as

7   taken stenographically by and before me at the time,

8   place, and on the date hereinbefore set forth.

9        I DO FURTHER CERTIFY that I am neither a

10  relative nor employee nor attorney nor counsel of any

11  of the parties to this action, and that I am neither

12  a relative nor employee of such attorney or counsel,

13  and that I am not financially interested in the

14  action.

15

16

17

18

19      *Theresa O. Mastroianni*
        Theresa O. Mastroianni, C.S.R.
20      Notary Public, State of New Jersey
        My Commission Expires May 5, 2010
21      Certificate No. X10857
        Date: June 4, 2009

22

23

24

25

**A**

absolutely 10:23
11:22
absurd 13:16
accurate 16:6
action 1:2 4:3
16:11,14
actionable 14:17
15:3
activities 15:6
acute 9:20 15:4
addressed 11:13
12:23
addressing 14:5
adequate 13:6
administrative
5:13
Affairs 5:5,11
5:15 9:18
10:20
agenda 10:18
12:14
aggressive 12:1
Agreement 4:7
al 1:9
albeit 10:17
allegations 4:11
13:24
allege 5:6 13:14
allow 13:14
Alvin 1:7 4:2
Amendment's
12:4
amount 11:8
15:13
analysis 13:13
and/or 9:6 11:14
answer 5:21,23
6:8,19,23 7:1,4
7:14,17,19,22
7:25 8:4 10:3
answers 10:2
appears 5:16
13:9
applicable 4:11

application
10:23
applied 4:8 9:8
approach 13:21
approached
10:8
arcade 5:24,25
6:4 7:7 10:5
area 5:14,25
11:6,23
arms 6:2
arrived 4:17
10:5
asked 9:4 11:2
assault 5:7 7:15
12:10 14:19
assaulted 5:9,20
7:13
assert 5:8
assess 9:4
assigned 4:21
assignment 4:19
attention 14:2
attorney 16:10
16:12
ATTORNEYS
3:7
Audubon 2:21
awaiting 5:14
award 13:3
15:12

**B**

back 12:2
Baker 4:24 5:1
based 4:9
basically 10:19
basis 10:18
11:18
batted 8:13
Bayside 1:5 4:17
beginning 5:18
belabor 14:5
believe 8:17
13:13
benign 11:3

better 10:12
Beverly 4:25,25
Big 6:21
BISSELL 1:20
4:1
bit 12:4
black 6:21,23
Brooks 9:10
10:21
brought 14:2

**C**

C 3:2 16:1,1
called 5:14
Camden 2:9
carrying 6:20
case 9:14 10:18
12:3 13:5,11
14:7
cast 8:23 9:1
cause 15:8
cell 4:21 5:7 6:25
certain 5:11
9:12
certainly 9:13
Certificate
16:21
Certified 2:5,19
16:4
certify 16:5,9
characterize
14:9
characterized
9:14
charges 4:10
choose 14:4
Cir 9:10
Circuit 13:12
Circuits 13:22
circumstances
12:12 14:3
civil 1:2 4:2,14
claim 12:25
14:20
classification
4:20

color 6:22
come 5:19
command 8:2
commencing 2:9
Commission
16:20
comparable
14:3
compensatory
14:18 15:13
completely
10:24 11:2,21
12:13
compliance
11:11
compliant 10:24
component 13:2
comtemplation
14:14
conclusion 9:3
conscience 12:9
12:12
considerably
11:10
considered 9:11
15:2
consisted 10:2
consistent 10:4
constitute 4:14
constitutional
12:6
construing 13:9
continuing 6:7
15:5,8
control 11:21
Correct 7:17
corrections
10:16
counsel 16:10,12
couple 9:21
course 14:9
court 1:1 2:6,8
2:19 8:24 10:4
12:3 15:12
courtyard 5:2
cover 9:13

credibility 8:23
9:2
cross-examina...
8:5,16
cruel 12:5
C.S.R 16:19

**D**

damages 11:15
14:18,21 15:13
danger 11:5
date 16:8,21
day 5:4
days 9:21
dealing 9:5
death 10:16
December 4:18
decision 4:8
decisions 14:2
Defendants 1:10
3:7
defense 10:1
deformed 9:21
15:7
deminimis 9:5,6
9:9,15,24
11:14 12:7,20
12:21,22 13:4
13:17,23 14:8
depositions 8:18
describe 5:11
6:17
described 14:7
describes 12:3
description 8:21
design 12:16
determination
9:9
determining
9:13
different 8:22
digits 8:10
direct 4:23
direction 7:10
directives 4:5
discussed 14:25

disobey 8:2
distress 15:8
district 1:1,2 2:8
  15:12
doubt 8:23 9:1
D-708 10:1

___ E ___
E 3:2,2 16:1,1
early 5:10
east 5:24,25 6:4
  7:7 10:5
effectively 9:1
effort 12:1
efforts 11:24
egregious 14:20
Eighth 12:4
either 11:5
elaborate 12:19
emerging 13:5
emotional 12:25
  13:24
employed 6:5
employee 16:10
  16:12
encouraged 11:1
enter 15:12
entire 8:12
entirely 10:3
  12:17
escorted 6:25
  7:10
ESQUIRE 3:5
essentially 9:7
establishes
  10:13
et 1:9
event 8:21
events 5:12
eventually 4:20
  9:21
evidence 8:25
  9:4 10:1 14:25
  15:1
excessive 12:17
  14:13

excludes 12:6
exclusive 9:12
Expires 16:20
extensive 11:13
extent 4:11 9:19
  11:12,14,16
  14:8
extracted 5:3
extraction 5:7,9
e(e) 13:10,14,17

___ F ___
F 4:21 7:6 16:1
face 6:10 10:6
facility 4:19
facing 11:5
fact 4:24 8:9,18
  9:18 10:14
  14:10,15
factors 9:11
  10:22
facts 4:8 11:19
factual 9:25
fall 10:22
fatal 8:8
fatally 8:22
FAUVER 1:9
favor 15:14
February 4:19
fellow 10:16
finalized 4:13
Finally 14:24
financially
  16:13
find 8:8,20 9:15
  12:10,20 14:6
  14:18 15:2,3
fingers 7:20 8:6
  8:7,10,14
first 5:1,16 8:21
  9:20 10:6
five 9:11 11:24
follow 7:6 13:21
follows 13:13
force 9:5,8,14,18
  10:23 11:8,9

12:7,8,17
  14:13
forceful 11:25
foregoing 16:5
FORMAROLI
  2:18
forth 4:9 16:8
fortunate 14:10
four 8:6,10,14
  10:3 11:16
frankly 12:10
FURTHER 16:9
Furthermore
  8:11 9:25
F.3rd 9:10

___ G ___
gate 5:24 7:7
gauntlet 5:24
Gerry 2:8
given 8:2
go 5:25 6:3,9 7:9
  10:7
going 7:5 9:17
grab 6:2
grabbed 6:14
GRIEGEL 3:5,5
guiding 4:7
gym 6:3

___ H ___
H 1:9
HAMILTON
  3:6
hand 6:12,14,14
  6:15,15,16
  7:13,16,18
  8:11,19 10:9
  10:11 11:3
  12:2
handcuffed 11:3
handled 11:1
head 6:13 10:10
heard 4:25
held 8:19 9:16
hereinbefore

16:8
HIGHWAY 3:6
hit 6:15 7:21 8:7
  10:11
HONORABLE
  1:20
Horn 13:12
Horse 2:20
House 2:8
Hudson 12:3

___ I ___
IA 7:9 10:8
imposed 14:13
incident 14:17
inconsistency
  8:8,9
incurred 15:10
indicated 8:6
indicates 10:15
inflict 12:16
inflicted 9:19
  11:12 14:22
  15:3
initially 15:4
injured 14:10
injury 9:6,19,24
  11:12,14 12:20
  12:21,22 13:1
  13:2,3,4,15,18
  13:18,24,25
  14:4,8,23 15:2
  15:3
inmate 11:11,21
inmates 5:3
  11:17
instance 8:21
instructions
  4:10 10:25
intent 12:16
interested 16:13
Internal 5:5,11
  5:15 9:17
  10:19
interrogatories
  10:3

interviewed 5:6
introduced 10:1
involving 12:20
  14:4
isolated 14:16
issued 4:4
item 14:24

___ J ___
Jersey 1:2 2:7,9
  2:21 3:6 16:5
  16:20
JOHN 1:20
journey 5:10 6:6
JUDGE 4:1
July 5:4
June 1:15 4:22
  12:23 16:21
jury 4:9,10

___ K ___
know 10:12
known 11:19
Kyler 9:10

___ L ___
lasting 9:22
law 4:7 9:7
  12:23 13:5
left 6:1,11,12,12
  6:16 7:19 9:16
  9:21 10:9,11
  15:7
legal 14:15
length 15:9
let's 10:21
level 14:19
license 2:6
light 14:15
line 5:18 6:7
Litigation 1:6
little 9:22
Local 4:13
long 6:21
look 10:21

**M**

mankind 12:9 12:13
map 6:5
Master 1:6,20 4:6,16 15:1
Master's 4:6
Mastroianni 2:5 2:18 16:3,19
matter 1:4 2:5 4:2 5:6 9:7 12:23 13:15,21
mean 6:18
meaningless 13:20
means 8:8
measurable 15:9
Mejias 4:10
mentioned 5:8 8:18
mere 13:19
minor 13:15
Mitchell 13:11
motion 9:3,8
murder 4:23

**N**

N 3:2
nature 14:7
necessarily 12:6
necessary 12:19
need 10:23 11:8 11:9
needed 10:25 11:10
neither 16:9,11
New 1:2 2:7,9,21 3:6 16:4,20
night 10:11
nose 10:6
Notary 2:7 16:3 16:20
note 8:5
noted 14:12
number 2:6 4:21 10:3 14:1

**O**

O 2:5 16:3,19
observations 11:14
occasion 12:11
occurring 5:12
office 5:10
officer 4:24 5:1 5:25 6:1,10,11 6:11,12 8:19 9:15 10:15,16 10:17 12:11
officers 6:3,25 7:3,7,10 8:3 11:6,20 14:22
officials 11:18
omission 8:20
once 8:22 11:25 13:8 14:1
opinion 13:7
opinion/report 1:5 4:4 14:25
opportunity 11:5
opposed 8:11
order 4:5,16 13:2
outside 10:6

**P**

P 3:2,2
page 5:18 6:7 12:24
pages 5:16
pain 9:20,22 15:5
pairs 7:4
paragraph 4:15
particular 11:19 11:20 14:6
parties 16:11
parts 5:10
PC 3:5
people 8:10
perceived 11:17
permanent 15:4

persist 9:9
person 12:14
persons 11:23
philosophy 13:8
physical 12:7 13:1,15,18,23 15:8
physically 8:13
Pike 2:20
pinky 9:21 15:7
place 6:13 10:9 10:10 16:8
placed 5:12 6:13 10:6
plaintiff 10:24 13:14
Plaza 2:8
pleading 13:19
PLRA 13:2,9
PLRA's 13:5
PM 2:9
point 10:5,25
position 9:17 11:3
possible 8:13
post 7:8
practical 13:21
predicate 13:24
prepared 9:7
prerequisite 13:19
presence 11:20
presentation 13:6
presented 8:24 9:1 15:1
principles 4:7 14:15
prior 8:17
prison 1:5 4:18 5:14
proceeded 5:23 6:2
proceedings 2:4 4:2
produce 13:15

prohibition 12:5
prolonged 14:17
prompt 11:11
proven 11:15
provided 12:7
psychological 12:25
Public 2:7 16:3 16:20
punishment 12:16
punishments 12:5
punitive 14:21
purposes 13:6
pursuant 4:5

**Q**

question 5:19,22 6:17,21,24 7:2 7:12,15,18,20 7:23 8:1 9:23
questioned 10:8
questions 9:4
quoting 13:11

**R**

R 3:2 16:1
range 8:15
read 5:17 13:17
reading 13:13
reason 10:15
reasonably 11:17
rebut 9:1
recites 9:11
recognition 12:6
recommend 15:11
record 14:5
recovery 14:18
reestablishes 10:14
refer 8:10
Reference 4:5 4:16

regard 1:4 8:17
regular 10:18
reiterate 12:18 13:7
relationship 11:7
relative 16:10,12
remained 4:18 15:4
remarks 4:25
rendering 13:20
reopening 4:1
repeated 14:17
report 4:15 15:11
Reporter 2:6 16:4
Reporting 2:19
repugnant 12:8 12:12
required 4:15
requirement 13:5,19,20
requiring 13:17 13:22
response 11:25
responsible 11:18
restriction 15:6
result 13:16
review 4:13 9:25
reviewed 15:2
right 6:1,3,11,15
rose 14:19
ROSELLI 3:5
rule 4:14 9:7

**S**

S 3:2
sadistic 12:15 14:13
safety 11:17
satisfy 13:5
saw 4:24,25
saying 10:10
scream 7:23

Second 11:7
secondly 8:22
Section 13:10
see 7:9,11 10:22
segment 5:13
segments 5:17
serving 10:18
    12:13
set 4:9 16:8
setting 11:19
seven 4:15
severely 14:11
severity 11:25
short 8:25
Shorthand 16:4
show 6:5
significance
    12:22
significant 13:23
    15:5
similar 14:3
single 14:16
slight 13:3
slightly 15:7
SOG 8:2 10:17
    12:11
SOGs 10:8
sort 12:8
South 2:20
speak 5:15 9:17
Special 1:6,20
    4:6,6,16 15:1
specific 12:15
specifically 14:6
spread 8:12
SQUARE 3:6
stabbed 4:24
staff 11:17
stagger 5:1
stairs 7:5
stand 6:9
standards 12:20
State 1:5 2:7 3:6
    4:17 16:4,20
stated 9:6
states 1:1 2:8

10:5
stenographica...
    16:7
STEVEN 3:5
stick 6:15,18,19
    10:11
strike 7:12 9:18
striking 10:14
    14:16
succinctly 12:4
sufficient 13:4
support 12:25
    13:2 14:20
Supreme 12:3
surrounding
    11:23
swelling 9:20

——— T ———
T 16:1,1
take 10:21
taken 2:5 5:5
    16:7
talk 14:3
talking 7:16
tell 10:12,19
temper 11:24
    12:1
tents 4:20
terms 12:14
testified 4:21
testimony 5:16
    8:17,24 9:2
    10:4 16:6
Theresa 2:5 16:3
    16:19
things 11:1
think 12:19 13:6
Third 13:12
Thornton 1:7
    4:2,12,17
    14:14,16
Thornton's 9:16
    10:2 14:4 15:6
    15:14
threat 11:16,22

Three 11:12
thumb 8:7,11,14
    8:14
THURSDAY
    1:15
time 4:25 5:19
    7:9,13 8:1 9:6
    9:16 11:20
    12:18 15:9
    16:7
told 6:12 10:9,12
transcript 2:4
    4:14 12:24
    16:6
transferred 7:3
true 16:6
try 6:5
turn 13:18
two 6:25 7:5,7
    7:10

——— U ———
underlie 4:8
unhandcuffed
    6:12
unidentified
    14:21
unintended
    13:16
unit 4:21 5:1,4
    7:6
United 1:1 2:8
unnecessary
    12:2,13 14:13
unusual 8:9 12:5
USC 13:9
use 9:14 12:8,17
uses 12:7

——— V ———
v 9:10 13:12
various 5:17
Videoconfere...
    2:19
view 10:13
visited 14:19

vs 1:8
vulnerable 11:2

——— W ———
W 1:20
wait 10:6
waiting 10:7
wake 10:16
walk 6:2
walked 7:5
Walker 4:10
wall 5:13 6:8,10
    6:13,14 7:9
    8:12,19 10:7
    10:10 11:4
wanted 12:14
waterfront 9:13
way 5:9 7:24
we're 7:16 13:8
whack 12:2
whatsoever
    11:22
White 2:20
WILLIAM 1:9
witness 4:23 9:2
    12:15
words 13:1
worked 7:4
    10:17
written 4:15

——— X ———
XIO857 16:21

——— Y ———
yard 6:9

——— Z ———
zero 11:9

——— $ ———
$2,000 15:13

——— 0 ———
08102 2:9
08106 2:21
08690 3:6

09-2365 1:2 4:3

——— 1 ———
102 9:10
107 12:24
11th 13:22
12:08 2:9
13 5:18
1337 3:6
1996 4:18
1997 5:4 13:10
    13:14,17
1999 4:19

——— 2 ———
2 4:22 12:23
20 6:7
2000 9:10
2009 1:15 16:21
2010 16:20
204 9:10
246 4:21
251 2:20

——— 3 ———
3rd 9:10
30th 5:4
30X100085700
    2:6
31 5:16,18
318F.3rd 13:12
32 6:7
33 3:6
34 5:17

——— 4 ———
4 1:15 16:21
42 13:9

——— 5 ———
5 16:20
5th 13:22
52.1 4:14
523 13:12

——— 6 ———
609-586-2257

3:7

**8**

**856-546-1100**

2:22

**9**

**9th** 13:22